**Joseph L. WILSON, Plaintiff,**

v.

**AMTRAK NATIONAL RAILROAD CORP., Defendant.**

Civ. No. JH–91–2802.

United States District Court,
D. Maryland.

Aug. 20, 1992.

Joseph L. Wilson, plaintiff, pro se.

Nancy Carolyn Lee, Washington, DC, and Anthony W. Kraus, Miles & Stockbridge, Baltimore, MD, for defendant.

## MEMORANDUM OPINION

JOSEPH C. HOWARD, Senior District Judge.

Presently before the Court is Defendant National Railroad Passenger Corporation's (Amtrak) motion to dismiss or for summary judgment. Plaintiff Joseph L. Wilson has opposed the motion, and the defendant has replied. With these memoranda, the Court determines the matter is ready for disposition. No hearing is deemed necessary. Local Rule 105.6.

### I. BACKGROUND

The facts as pled by the defendant are as follows.[1] The plaintiff began working for

---

1. The plaintiff has provided no specific facts to support his claim either in his complaint or in his opposition to the defendant's present motion.

Amtrak in its Track and Maintenance Department in 1977. In 1984, he took an extended leave of absence for medical reasons. In November of 1988, the plaintiff called Assistant Division Engineer Steven W. Haerter, who had been placed in charge of the plaintiff's previous unit during the plaintiff's absence, requesting that he be allowed to return to work. Mr. Haerter, who had never heard of the plaintiff, began reviewing documents to determine his employment status. The last medical document on record was an unanswered, October 1986 letter from Amtrak to the plaintiff requesting medical documentation from the plaintiff's personal physician. After further being informed by Amtrak's medical director in Washington, D.C. that the plaintiff's file was current, Mr. Haerter wrote the plaintiff, requesting documentation to support his extended leave and his current ability to return to work. When no response was received in the following two-and-one-half months, Mr. Haerter sent the plaintiff a letter informing him that he had forfeited his right to re-employment.[2]

The plaintiff then filed a charge of discrimination in April 1989 with the Maryland Commission on Human Relations and the Equal Employment Opportunity Commission (EEOC), alleging that the termination was retaliatory because the plaintiff had previously filed a similar discrimination charge against Amtrak for occurrences between 1978 and 1984. That previous charge, based on discrimination due to race and handicap and filed in 1984, had been found to lack probable cause and was dismissed by both the Maryland Commission and the EEOC in 1988. In defense of the second charge, Amtrak denied that the termination was retaliatory and asserted that Mr. Haerter could not have known, and in fact did not know, of the previous discrimination charge which occurred before his current employment began. Again, the Maryland Commission issued a no

probable cause finding and dismissed the charge in December 1989. In July 1991, the EEOC adopted this decision and issued its own determination that no discrimination took place. Following that determination, plaintiff brought this action.

## II. ANALYSIS

To support his claim of discrimination, the plaintiff cites various provisions, including the Fourteenth Amendment to the United States Constitution; the Rehabilitation Act of 1973, 29 U.S.C. § 703; the Vietnam Era Veterans' Readjustment Assistance Act of 1974, 38 U.S.C. § 2021; Executive Order 11246;[3] and Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.* For the reasons that follow, the suit cannot be maintained under the Fourteenth Amendment, the Rehabilitation Act, the Vietnam Era Veterans' Readjustment Act, or Executive Order 11246. Accordingly, those portions of the present action must be dismissed. The Title VII claim also fails because the plaintiff has offered no evidence to support his contention that Amtrak's decisions were motivated by a discriminatory purpose. Each of plaintiff's claims will be addressed in turn.

### A. The Fourteenth Amendment

 The plaintiff asserts that his termination resulted in a violation of the Fourteenth Amendment to the United States Constitution. The Fourteenth Amendment, however, cannot be asserted as the basis of a civil suit against a private corporation. Rather, it may extend only to actions against governmental agencies. The Supreme Court in *District of Columbia v. Carter,* 409 U.S. 418, 93 S.Ct. 602, 34 L.Ed.2d 613 (1973), stated that the "commands of the Fourteenth Amendment are addressed only to the State or to those acting under color of its authority ... The Fourteenth Amendment itself 'erects no shield against merely private con-

---

2. The terms of the plaintiff's employment had been governed by Amtrak's agreement with the Brotherhood of Maintenance of Way Employees (BMWE). According to Amtrak, the forfeiture of re-employment was based on Rule 21(a) of the BMWE Agreement, under which employees who fail to notify the company of their whereabouts for fourteen consecutive days are considered as having resigned their position unless they can

furnish evidence of physical incapacity or that circumstances beyond their control prevented notification.

3. The plaintiff also cites Executive Order 10925, but that order has been superseded by Executive Order 11246.

duct, however discriminatory or wrongful.'" *Id.* at 423–424, 93 S.Ct. at 606 (citing *Shelley v. Kraemer,* 334 U.S. 1, 13, 68 S.Ct. 836, 842, 92 L.Ed. 1161 (1948)).

Amtrak was created by the Rail Passenger Service Act, 45 U.S.C. § 501, *et seq.,* in which Congress recognized the need for a modern, efficient rail passenger service. 45 U.S.C. § 501(a): Specifically, Amtrak was created as a for profit corporation and not as an agency or establishment of the United States Government. 45 U.S.C. § 541. Accordingly, the Court finds that the Fourteenth Amendment action may not be maintained against Amtrak. This holding is consistent with decisions in other circuits on the issue of whether Amtrak's decisions constitute government action. *See, e.g. Anderson v. National Railroad Passenger Corp.,* 754 F.2d 202, 204 (7th Cir.1984) ("The ties between Amtrak and the federal government do not warrant a finding of governmental action for purposes of the fifth amendment."); *Kimbrough v. National Railroad Passenger Corp.,* 549 F.Supp. 169 (M.D.Ala.1982) (Amtrak is not a government agency for application of Fifth Amendment due process). The plaintiff's Fourteenth Amendment claim must therefore be dismissed.

**B. The Rehabilitation Act of 1973**

■ The plaintiff also asserts that Amtrak's actions were in violation of § 503 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 793, which prohibits discrimination against qualified handicapped individuals by employers with government contracts. However, § 503 of the Rehabilitation Act may not serve as a basis for the present suit. Section 503 does not expressly create a private right of action, and most circuits have recognized that the language and legislative history of the act do not imply the right to bring a cause of action. *See, e.g. Hodges v. Atchison, Topeka & Santa Fe Ry. Co.,* 728 F.2d 414 (10th Cir.), *cert. denied,* 469 U.S. 822, 105 S.Ct. 97, 83 L.Ed.2d 43 (1984), *Beam v. Sun Shipbuilding and Dry Dock Co.,* 679 F.2d 1077 (3rd Cir.1982), *Davis v. United Airlines, Inc.,* 662 F.2d 120 (2nd Cir.1981), *cert. denied,* 456 U.S. 965, 102 S.Ct. 2045, 72 L.Ed.2d 490 (1982), *Simpson v. Reynolds*

*Metals Co., Inc.,* 629 F.2d 1226 (7th Cir. 1980), *Rogers v. Frito–Lay, Inc.,* 611 F.2d 1074 (5th Cir.), *cert. denied,* 449 U.S. 889, 101 S.Ct. 246, 66 L.Ed.2d 115 (1980). Rather, § 503(b) provides that complaints are to be filed with the Department of Labor, which shall investigate the matter and take appropriate action. Accordingly, the Court agrees that no private right of action is created by § 503 of the Rehabilitation Act and, therefore, this claim must also be dismissed.

**C. Vietnam Era Veterans' Readjustment Assistance Act of 1974**

■ The Vietnam Era Veterans' Readjustment Assistance Act of 1974, 38 U.S.C. § 4212, requires government contractors to take affirmative action to employ and advance in employment qualified special disabled veterans and veterans of the Vietnam era. 38 U.S.C. § 4212(a). However, this act also allows any disabled veteran alleging a violation to file a complaint with the Secretary of Labor. 38 U.S.C. § 4212(b). Like § 503 of the Rehabilitation Act, courts have held that the Vietnam Era Veterans' Readjustment Assistance Act does not create a private right of action. *Harris v. Adams,* 873 F.2d 929 (6th Cir.1989), *Barron v. Nightingale Roofing,* 842 F.2d 20 (1st Cir.1988). Again, the Court agrees and will therefore dismiss the claim brought under this act.

**D. Executive Order 11246**

■ Executive Order 11246, 3 C.F.R. 339, *reprinted in* 42 U.S.C. § 2000e note, prohibits government contractors and subcontractors from discriminating in employment on the basis of race, color, religion, sex, or national origin and requires them to take affirmative action to ensure that such applicants are employed. Once again, however, employees alleging a violation have been held not to have a private right of action under this order. *Utley v. Varian Assoc.,* 811 F.2d 1279 (9th Cir.), *cert. denied,* 484 U.S. 824, 108 S.Ct. 89, 98 L.Ed.2d 50 (1987), *Cohen v. Illinois Institute of Technology,* 524 F.2d 818 (7th Cir.1975), *cert. denied,* 425 U.S. 943, 96 S.Ct. 1683, 48 L.Ed.2d 187 (1976). Accordingly, the plaintiff's claim under this order must also be dismissed.

## E. Title VII of the Civil Rights Act of 1964

Defendant Amtrak does not allege that Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, is an improper basis for an employment discrimination suit such as the one alleged here. Rather, Amtrak alleges that the plaintiff has offered no evidence and cannot offer evidence to support an allegation of discriminatory conduct and, therefore, is entitled to summary judgment as a matter of law.

█ The evidentiary burdens of proof applied to a Title VII case were set forth by the U.S. Supreme Court in *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). First, the plaintiff has the burden of proving by a preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the employee's termination. Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination. *Id.* at 252–253, 101 S.Ct. at 1093.

█ *Burdine* described the burden of proving a prima facie case of employment discrimination as requiring the plaintiff to prove by a preponderance of the evidence that the plaintiff applied for an available position for which he or she was qualified, but was rejected under circumstances which give rise to an inference of unlawful discrimination.[4] Because the instant case involves a terminated employee rather than a rejected applicant, this prima facie case must be altered. Here, plaintiff must prove by a preponderance of the evidence that he was qualified for the position which he held but was terminated under circumstances giving rise to an inference of discrimination. Amtrak asserts that the plaintiff has not shown that he was qualified for his position because he has not produced medical documentation to reflect his ability to work. The Court agrees. Because the plaintiff was absent from work for more than four years for medical reasons, he must demonstrate that he was medically able to return to work. Without such evidence, the plaintiff cannot prove that he was qualified for the job and has failed to prove a prima facie case of unlawful discrimination.

█ Even if the prima facie proof were satisfied, Amtrak asserts in the alternative that it is still entitled to summary judgment. Assuming plaintiff has made out a prima facie case of discrimination, the burden would be shifted to Amtrak to articulate a legitimate, nondiscriminatory reason for the termination of the plaintiff's employment. Amtrak has met this burden. Amtrak claims that upon hearing the plaintiff's request to return to work, Mr. Haerter researched the plaintiff's records to determine his current status. Finding no medical documentation to support plaintiff's ability to work, Mr. Haerter requested such documentation directly from the plaintiff. After the plaintiff failed to submit such evidence for two-and-a-half months, Mr. Haerter properly terminated his employment.

Amtrak having satisfied its burden of proof, the burden is then shifted back to the plaintiff to prove that the reasons set forth by the defendant were merely a pretext to discrimination. This burden the plaintiff cannot meet. There is nothing in the record to indicate that Amtrak's decision was motivated by a discriminatory purpose.[5] Amtrak contends that no other individuals who were on medical leave were permitted to return to

---

4. The U.S. Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) described a more precise model for a prima facie case of racial discrimination, but it also recognized that the standard was not inflexible, as the facts of each case may require differing applications. *Id.* at 802 n. 13, 93 S.Ct. at 1824 n. 13, *cited in Burdine*, 450 U.S. at 253 n. 6, 101 S.Ct. at 1094 n. 6.

5. Amtrak contends that the plaintiff was nonresponsive and uncooperative during his deposition, excerpts from which have been included with Amtrak's pleadings. Since the session was ended by the plaintiff after less than one hour, direct questions concerning racial discrimination were not answered.

work without providing sufficient medical documentation for the absence and their ability to return to work. The plaintiff can offer nothing to dispute this contention. The inability of the plaintiff to offer such evidence causes his case to fail, and summary judgment must be granted in favor of Amtrak on the Title VII claim.

 As for allegations made for discriminatory practices occurring between 1978 and 1984 while the plaintiff was still employed at Amtrak, these claims are time-barred. These allegations were the subject of the plaintiff's first charge of discrimination filed with the Maryland Commission and the EEOC in 1984. After both bodies found that no probable cause existed to support the charge, the EEOC issued a notice of right to sue. Pursuant to Title VII, the plaintiff was notified in 1988 that should he wish to pursue the matter further, he could file a private action in the Federal District Court within 90 days. 42 U.S.C. § 2000e–5(f)(1). Having waited until 1991 to file an action, he is barred from asserting those allegations at this time.[6]

### III. CONCLUSION

For the foregoing reasons, the plaintiff's claims brought under the Fourteenth Amendment to the United States Constitution, the Rehabilitation Act of 1973, the Vietnam Era Veterans' Readjustment Assistance Act of 1974, and Executive Order 11246 must accordingly be dismissed. Summary judgment must be granted for the defendant on the plaintiff's claim brought under Title VII of the Civil Rights Act of 1964. The Court will enter a separate order.

### ORDER

In accordance with the Court's Memorandum Opinion of even date, it is this 20th day of August, 1992, by the United States District Court for the District of Maryland,

**ORDERED:**

6. Only the allegations contained in the first EEOC and Maryland Commission charge are time-barred. The termination itself was not part of that charge. Rather, it was the subject of the second charge filed in 1988. The no probable

(1) that defendant Amtrak's motion to dismiss or, in the alternative, for summary judgment BE, and the same hereby IS, **GRANTED**; and

(2) that judgment BE, and the same hereby IS, **ENTERED** in favor of defendant Amtrak and against plaintiff Wilson as to all counts; and

(3) that the Clerk of the Court CLOSE this case; and

(4) that the Clerk of the Court MAIL a copy of this Order and the Court's Memorandum Opinion to counsel and the *pro se* plaintiff.

cause finding and notice of right to sue stemming from this charge were issued in July 1991, and the present action was timely filed within 90 days.